# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAREMONT APARTMENTS, LP, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-6138 |
| | : | |
| v. | : | |
| | : | |
| PRINCIPAL COMMERCIAL FUNDING II, LLC, and | : | |
| PRINCIPAL COMMERCIAL FUNDING, LLC, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                                                                                          June 8, 2010

Plaintiff, Claremont Apartments, LP ("Claremont"), filed this action to assert breach of contract claims against Defendants Principal Commercial Funding II, LLC ("Principal II") and Principal Commercial Funding, LLC ("Principal I"). Currently pending before the Court is Defendants' Motion to Dismiss the Complaint for Failure to State a Claim.

## I.  FACTUAL BACKGROUND[1]

Plaintiff Claremont owns and operates the Claremont Apartments, a complex of 243 apartments located in Exton, Pennsylvania. (Compl. ¶ 9.) Plaintiff sought a fixed rate loan that would be secured by its apartment complex. (Compl. ¶ 1, Ex. 1.) In response to this request, Principal I submitted to Claremont proposed terms and conditions (the "Application") for such a

---

[1] For the purposes of this opinion, the Court accepts as true Plaintiff's factual allegations. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

loan. (Compl. ¶ 12, Ex. 1.) On July 23, 2007, as a precursor to a forthcoming loan agreement, Claremont accepted the Application. (Compl. ¶ 11, Ex. 1.) The Application provided for a loan of approximately $32,000,000 over a term of ten years, with amortization to be based upon a thirty-year period and a balloon payment towards the end of the loan term (these terms, collectively, will be referred to as "the Loan"). (Compl. ¶ 12-13, Ex. 1.) The Application further provided that Claremont, as the borrower, "'may lock the interest rate upon entering into Lender's Rate Lock Agreement and Lender's receipt of $320,000 (1%) Rate Lock Deposit.'" (Compl. ¶ 14, Ex. 1.) In accepting the Application, Claremont paid an "Application Deposit" in the amount of $30,000. (Compl. ¶ 16, Ex. 1.) Although the Application specified the general terms of the loan, it included language specifying that it "is provided for discussion purposes only and does not constitute a commitment to lend or an agreement to issue a commitment, but merely indicates Lender's willingness to proceed with its evaluation of this potential transaction." (Compl., Ex. 1 at 4.) The Application also stated that "[p]rior to closing, no 'material adverse change' shall have occurred (a) in the Property or in the financial conditions of major tenants, Borrower or sponsors, or (b) in the financial, banking, or capital market conditions that could impair the sale of the Loan by the Lender." (Id.)

On the same day it accepted the Application, July 23, 2007, Claremont also entered into the Rate Lock Agreement, as offered in the Application. (Compl. ¶ 15, Ex. 2.) Claremont entered the Rate Lock Agreement, however, not with Principal I, but with Principal II. (Id.) Principal I and II appear to be affiliated yet separate entities. They are both Delaware limited liability companies, with principal places of businesses at 801 Grand Avenue, Des Moines, Iowa, but ownership interests in the two entities appear to diverge. (Compl. ¶ 4.) Principal I is owned

directly or through subsidiaries by Principal Financial Group, Inc., a Delaware corporation also with its principal place of business in Des Moines, Iowa. (Id.) On the other hand, Principal II is jointly owned – directly or through subsidiaries – by Principal Financial Group, Inc. and U.S. Bank, N.A., a nationally chartered bank with its principal place of business in Minneapolis, MN. (Id.) U.S. Bank, N.A., in turn, is owned directly or through subsidiaries by U.S. Bancorp, a Delaware corporation that also maintains its principal place of business in Minneapolis, MN. (Id.)

The Rate Lock Agreement provided that Claremont would receive a per annum interest rate of 6.25% on its loan in exchange for payment of $320,000, which represented 1% of the total loan amount, $32 million. (Compl., Ex. 2-A.) The Agreement further provided that the rate lock would be in place for 120 days at a minimum. In its final section of substantive provisions, the Rate Lock Agreement directs that "[n]othing contained herein shall be deemed a waiver or limitation of any term or condition contained in the Application," and that "this Agreement represents the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communications and prior writings." (Compl., Ex. 2 at 4.) Claremont complied with all of the conditions precedent required for the Rate Lock Agreement to go into effect. (Compl. ¶ 18.)

In the days before closing on the loan, Principal II told Claremont that, despite the Rate Lock Agreement, it could not provide an interest rate of 6.25% per annum, but only a higher rate of 6.40%. (Id. ¶ 21.) To obtain the loan within the 120-day Rate Lock Period, Claremont had no choice but to enter into the Loan with Principal I, the aforementioned affiliate of Principal II. (Id. ¶ 22.) Completed within the 120-day period, on November 15, 2007, the Loan bore a 6.40%

interest rate per annum, 15 basis points higher than the Rate Lock Agreement had specified. (Id.
¶ 23.) Over the course of the Loan, the increased rate will result in the payment of roughly
$480,000 in additional interest and a reduced repayment of principal of over $100,000. (Id. ¶
24.)

## II. PROCEDURAL BACKGROUND

On December 24, 2009, Claremont filed the instant Complaint, which asserts breach of
contract claims against Principal II for its failure to offer the interest rate provided in the Rate
Lock Agreement. (Id. ¶¶ 28-30.) The Complaint seeks damages from both Principal I and II as a
result of the higher interest rate; it also requests equitable relief in the form of a prospective
declaration that the interest rate on Principal I's loan to Claremont is 6.25%, as opposed to the
current rate of 6.40%. On January 29, 2010, Principal I and II filed a Motion to Dismiss the
Complaint for Failure to State a Claim. Claremont filed its Response in Opposition shortly
thereafter on February 16, 2010. Subsequently, the Parties submitted two additional briefs.
Principal I and II filed a Reply Brief on February 27, 2010, and Claremont filed its Sur-Reply
Brief on March 4, 2010. The Court now turns to the arguments contained in these filings.

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. FED. R. CIV.
P. 12(b)(6). The starting point in analyzing a pleading is Rule 8(a), which requires that a
pleading, at a minimum, consist of "a short and plain statement of the claim showing that the
pleader is entitled to relief." FED. R. CIV. P. 8(a). Regardless of its exact form, however, a
pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face'" in order to withstand a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, —

U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When read in the light most favorable to the plaintiff, a pleading that provides sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." Iqbal, 129 S. Ct. at 1949; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (in accord with the dictates of Iqbal, extending the 12(b)(6) standard of review established in Twombly to all civil pleadings). On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Taken together then, in evaluating a pleading's sufficiency in relation to a Rule 12(b)(6) motion to dismiss, a "District Court must accept all of [a pleading's] well-pleaded facts as true" and construe them "in the light most favorable to the plaintiff," "but may disregard any legal conclusions[,]" in determining whether the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 210-211 (quoting Iqbal, 129 S. Ct. at 1949-50).

**IV. DISCUSSION**

Principal I and II seek dismissal of the Complaint on the grounds that the Loan Agreement between Claremont and Principal I is a fully integrated document, and thus the parol evidence rule prohibits the Court from considering any prior, inconsistent agreement – here, the Rate Lock Agreement – between those parties or their privies. Principal I and II further argue that the voluntary payment doctrine – that payment under a contract renders moot any claim for a previous breach – requires dismissal of Claremont's Complaint. Claremont responds first that at the Motion to Dismiss stage it would be improper for the Court to consider the Loan Agreement as a document upon which the Complaint is not based. Second, Claremont argues that the parol

5

evidence rule is inapplicable to its claims against Principal II, since Principal II was not a party to the Loan Agreement or a privy of Principal I. To bolster this argument, Claremont points out that it only claims breach of the Rate Lock Agreement, which is between Claremont and Principal II, as opposed to the Loan Agreement, which is between Claremont and Principal I. Third, Claremont contends that the voluntary payment doctrine is also inapplicable, because Claremont – assuming it had been making payments on the Loan – had been paying Principal I, not Principal II, and there is nothing in the record at this stage of the proceeding that evidences Claremont's payment under the Loan Agreement.

### A. Jurisdiction and Choice of Law

Before turning to the substance of theses arguments, the Court first examines its jurisdiction and the resulting choice of law issue. Claremont asserts that this Court has diversity jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a)(1), as Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. See also 28 U.S.C. 1332(c) (citizenship of a corporation).

A court sitting in diversity jurisdiction must determine which state's substantive law applies. Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). In order to resolve this issue, a court must rely on the choice of law rules of the state in which it sits. Kaneff v. Delaware Title Loans, Inc., 581 F.3d 616, 621 (3d Cir. 2009); see also Mzamane v. Winfrey, — F. Supp. 2d —, No. CIV.A.08-4884, 2010 WL 893126, at *7-8 (E.D. Pa. Mar. 15, 2010.) "Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d

161 (3d Cir. 1999). "Under Pennsylvania law, 'choice of law provisions in contracts will generally be given effect.'" Del. Valley Home Evaluations, Inc. v. Housemaster of Am., Inc., 559 F. Supp. 2d 591, 596-97 (E.D. Pa. 2008) (quoting In re Allegheny Intern., 954 F.2d 167, 178 (3d Cir.1992)); see also Cottman Transmission Sys., LLC v. Kershner, 492 F. Supp. 2d 461, 466-67 (E.D. Pa. 2007) (addressing the circumstances under which a choice of law clause may be invalidated).

In the present case, the two contracts at issue – the Rate Lock Agreement and the Loan Agreement – both contain choice of law clauses. The Loan Agreement requires that the laws of the State in which the relevant premises sit govern its terms. (Mot. to Dismiss, Ex. B, "Loan Agreement," § 11.6.) Thus, Pennsylvania law will apply to the Loan Agreement. The Rate Lock Agreement contains a choice law clause that directs Iowa law apply to its terms. (Compl., Ex. 2, §9(d).) Neither Plaintiff nor Defendants dispute the validity of these choice of law clauses. Accordingly, the Court abides by the parties' wishes in applying these respective States' laws to the individual Agreements.

**B. Whether the Court May Consider the Loan Agreement**

As it did not attach the Loan Agreement as an exhibit to its Complaint, Claremont contends that the Court may not consider the Loan Agreement in deciding Principal I and II's Motion to Dismiss. In response, Principal I and II argue that the Loan Agreement may be considered at this stage of the case, without converting its Motion to Dismiss to one for summary judgment.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension

7

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). As an exception to this general rule, "[a] 'court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document.'" Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008) (quoting Pension Benefit Guar. Corp, 998 F.2d at 1196-97) (determining that the district court should have considered the entirety of a letter defendant attached to its motion to dismiss, not just the portions of the letter plaintiff cited in the complaint). As the Third Circuit emphasized in In re Burlington Coat Factory Securities Litigation, "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The rationale behind this exception to the general rule is at least two-fold. First, "the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426) (internal quotation omitted). Second, if this exception was not in place, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp., 998 F.2d at 1196.

In the case at bar, the Court finds that the Loan Agreement is an indisputably authentic document and Claremont's claims are based upon it. The Loan – particularly, the variance in the Loan's interest rate from the rate set forth in the Rate Lock Agreement – gives rise to Plaintiff's claims for breach of contract. As such, the Loan Agreement and its ramifications are continually

8

mentioned throughout the Complaint. The very first paragraph of the Complaint directly addresses the Loan and the exact Loan terms that allegedly amount to breach of contract. (See Compl. ¶ 1.) An entire subsection of the Complaint is even titled "The Loan." (See Compl. ¶¶ 21-24.) Furthermore, Claremont requests declaratory relief from this Court in the form of altering the Loan's interest rate prospectively, and asserts that a controversy exists between it and the lender, Principal I. (Compl. ¶¶ 31-32.) These factors – taken together – demonstrate that the Loan Agreement is "integral to or explicitly relied upon in the complaint . . . ." In re Burlington Coat Factory, 114 F.3d at 1426-27. Moreover, Claremont does not question the authenticity of the Loan Agreement and has adequate notice and familiarity with the Agreement. Claremont thus should not be allowed to dodge Principal I and II's Motion to Dismiss by not attaching the Loan Agreement to its Complaint. To avoid this result and in accord with the limited exception allowing it to look beyond the pleadings, the Court will consider the Loan Agreement as it pertains to Principal I and II's pending Motion to Dismiss. See Pension Benefit Guar. Corp., 998 F.2d at 1196-97 (concluding that the court, in deciding a motion to dismiss, may consider a purchase and sale agreement between defendant and a non-party that was not included with the complaint, because plaintiff's claims were *based on* that agreement).

### C. The Effect of the Parol Evidence Rule as the Parties Agree that the Loan Agreement is Integrated

Principal I and II argue – and Claremont concedes – that the Loan Agreement is a fully integrated document, and thus the parol evidence rule applies to prevent the Court from considering any inconsistent prior or contemporaneous agreements between the parties, and their privies, to the contract. The disputed issue is whether the Loan Agreement, as a subsequent, fully

9

integrated document, supersedes the Rate Lock Agreement, even though different parties served as signatories to the respective agreements.

Since the parol evidence rule derives from substantive contract law, the Court turns to Pennsylvania law. See Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Inv., 951 F.2d 1399, 1404-05 (3d Cir. 1991). The Pennsylvania Supreme Court articulates the parol evidence rule as follows:

> 'Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.'

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)).[2] "The purpose of the rule is to 'preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract'" based upon prior or contemporaneous agreements. Hershey Foods Corp. v. Chapek, Inc., 828 F.2d 989, 994 (3d Cir. 1987) (quoting Rose v. Food Fair Stores, Inc., 262 A.2d 851, 853 (Pa. 1970)). Whether a writing is an integrated agreement that invokes the parol evidence rule is a determination for the court rather than a jury. See Chapek, 828 F.2d 989, 995 (3d Cir. 1987).

---

[2] Defined in the abstract, "'[p]arol evidence' means oral or written statements by the parties made prior to or contemporaneous with the written agreement that such statements purport to modify." PPG Indus., Inc. v. Zurawin, 52 Fed. Appx. 570, 572 (3d Cir. 2002) (citing Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir. 2001)).

Two considerations are at issue. First, "for the parol evidence rule to apply, there must be a writing that represents the 'entire contract between the parties,'" or in other words, the contract must be integrated. Yocca, 854 A.2d at 436 (quoting Gianni, 126 A. at 792); Lenzi v. Hahnemann Univ., 664 A.2d 1375, 1379 (Pa. Super. Ct. 1995) ("A contract is integrated if it represents a final and complete expression of the parties' agreement."). Second, "[i]f parties have integrated their agreement into a single written memorial, all prior negotiations and agreements in regard to the same subject matter, whether oral or written, are excluded from consideration." Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir.2001). In sum, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Yocca, 854 A.2d at 436.

Here, the parties are in accord that the Loan Agreement represents the final and complete expression of Principal I and Claremont's secured loan transaction. Principal I and II argued as much, and Claremont acknowledged that fact in its Sur-Reply Brief.[3] Since the Loan Agreement is thus an integrated document, the parol evidence rule applies to bar the Court from considering any inconsistent prior or contemporaneous agreements relating to the Loan between the parties,

---

[3] The Loan Agreement also contains an integration clause, indicating that the Loan Agreement "constitutes the entire agreement of the parties with respect to the Loan, and supersedes any prior negotiations or agreements . . . ." (Defs.' Mot. Dismiss, Ex. B at 49) As the Pennsylvania Supreme Court noted in Yocca, "[a]n integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." 854 A.2d at 436.

or their privies. Id. at 436. Viewed together with the integrated Loan Agreement, the Rate Lock Agreement is an inconsistent, prior contract, and, according to the dictates of the parol evidence rule, cannot be used to vary the terms of the Loan Agreement. Moreover, Claremont has not alleged that Principal I breached either the Rate Lock or the Loan Agreement. In the absence of an alleged breach by Principal I of the Loan Agreement and in light of the parol evidence rule barring consideration of the Rate Lock Agreement as it relates to Principal I, the Court dismisses Claremont's claims against Principal I.

### D. Whether the Parol Evidence Rule Bars Consideration of Principal II's Alleged Breach of the Rate Lock Agreement

Since Loan Agreement, as a fully integrated contract, invokes the parol evidence rule, the Court cannot consider prior, inconsistent agreements between the parties to the Loan Agreement or their privies in interpreting the Agreement's terms . See Yocca, 854 A.2d at 436. The parol evidence rule, however, "can have no relevancy where the suit is not between the two parties to the contract, or their privies." Roberts v. Cauffiel, 128 A. 670, 671 (Pa. 1925). In other words, the parol evidence rule "does not apply to strangers" to the contract. Id. (citation omitted); see also 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 33:9 (4th ed. 2010) ("The parol evidence rule is frequently held to apply only to the contracting parties and their privies and not to third persons, often referred to as 'strangers to the contract,' unless they seek to enforce rights under the contract."). Thus, the question arises whether Principal II is a party to the Loan Agreement or a privy of Principal I so that the parol evidence rule would apply with equal force to both Principal I and II, and thus preclude consideration of the Rate Lock Agreement altogether.

1. <u>Whether Principal II is a Party to the Loan Agreement</u>

"In Pennsylvania, '[i]f the court determines that a contract is clear, or unambiguous, then it construes the contract as a matter of law.'" <u>PSC Info Group v. Lason, Inc.</u>, 681 F. Supp. 2d 577, 585 (E.D. Pa.. 2010) (quoting <u>Allegheny Int'l v. Allegheny Ludlum Steel Corp.</u>, 40 F.3d 1416, 1424 (3d Cir.1994)). "When the words of a contract are 'clear and unambiguous,' the intent of the parties is derived from the express language of the agreement, and 'the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.'" <u>Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.</u>, 643 F. Supp. 2d 675, 685 (E.D. Pa. 2009) (quoting <u>Steuart v. McChesney</u>, 444 A.2d 659, 661 (Pa. 1982)).

A plain reading of the Loan Agreement reveals that Principal II is not a party to the Agreement. Principal II did not sign, did not acquire any direct responsibilities or benefits thereunder, and is not even mentioned in the Loan Agreement. See <u>Sheller Ludwig & Sheller P.C. v. Equitrac</u>, No. CIV.A.07-2310, 2008 WL 2370826, at *3-4 (E.D. Pa. June 9, 2008) (concluding that defendant was not a party to a lease agreement since the agreement did not contain the signature of a representative from defendant, did not name defendant as a lessor, and did not indicate that defendant was otherwise bound by it). In contrast to the omission of Principal II from its pages, the Loan Agreement defines Principal I as the "Lender" and Claremont as the "Borrower," and refers to the two parties continually as it sets forth the terms of the Loan. (Mot. Dismiss, Ex. B-1 at 1.) The Loan Agreement's explicit references to Principal I and Claremont make clear that those two entities are parties to the Agreement, whereas Principal II is not.

### 2. Whether Principal II is a Privy of Principal I

Frequently addressed in relation to claim or issue preclusion, privity – as Pennsylvania courts have ascertained – is defined as "'[m]utual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" Ammon v. McCloskey, 655 A.2d 549, 554 (Pa. Super. Ct. 1995) (quoting BLACK'S LAW DICTIONARY (5th ed. 1979)); see also Toll Bros., Inc. v. Century Sur. Co., 318 Fed. Appx. 107, 110-111 (3d Cir. 2009) (noting that Pennsylvania courts accept the notion of privity as defined in BLACK'S LAW DICTIONARY).

Here, on the well-pleaded facts before it, the Court cannot conclude that Principal II is a privy of Principal I. The Complaint alleges that Principal I and II share some common ownership and are, at a minimum, "affiliated entities." (Compl. ¶¶ 4, 9.) Principal I and II's respective roles as parties to either the Loan or Rate Lock Agreement in the transaction at issue demonstrate as much. On the basis of the Complaint read – pursuant to Rule 12(b)(6) – in the light most favorable to Plaintiff, the Court finds that Principal I and II do not share sufficient "mutual or successive relationships" or "identification of interest . . . to represent the same legal right." To reach a contrary conclusion would require Defendants to produce additional information as to the exact nature of the relationship between Principal I and II – information that is yet before the Court. Although, as Principal I and II argue, certain jurisdictions may relax the privity requirement for the parol evidence rule to apply, see Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Fed. Deposit Ins. Corp., 799 F.2d 622, 626 (10th Cir. 1986) (concluding that parol evidence rule barred the court from considering extrinsic evidence offered by a party "closely

affiliated" with a contracting party), it appears that Pennsylvania courts have yet to embrace as broad a construction of privity. Since Principal II is not a party to the Loan Agreement, nor at this stage in the case can the Court conclude that Principal II is a privy of Principal I, the parol evidence rule does not prevent the Court from considering claims that Principal II breached the Rate Lock Agreement. In light of these conclusions, Defendants' Motion to Dismiss on grounds of the parol evidence rule is denied.

### E. Whether the Voluntary Payment Doctrine Applies

As an alternative basis for dismissal, Principal I and II argue that, under Pennsylvania law, the voluntary payment doctrine prevents Claremont from asserting a breach of the Loan Agreement.

The voluntary payment doctrine is a form of estoppel. "Under the voluntary payment doctrine, '[w]here . . . one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered.'" Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp., No. 03-3020, 2005 WL 1693931, at *5 (E.D. Pa. July, 19, 2005) (quoting Acme Mkts., Inc. v. Valley View Shopping Ctr., Inc., 493 A.2d 736, 737 (Pa. Super. Ct.1985); see also Ochiuto v. Prudential Ins. Co. of Am., 52 A.2d 228, 230 (Pa.1947). "Thus, money paid voluntarily, although under a mistake of law as to the interpretation of a contract, cannot be recovered." Acme Mkts., 493 A.2d at 737.

The Court finds the voluntary payment doctrine inapplicable to Claremont's Complaint. As Claremont argues, it filed the instant action for breach of the Rate Lock Agreement, under which Claremont has not made any payments beyond the initial consideration to form the Agreement. Even assuming *arguendo* that Claremont paid Principal I under the Loan

15

Agreement, these payments would not preclude a claim for breach of the Rate Lock Agreement (a separate, though related, agreement) against Principal II, a non-party to the Loan Agreement. See Sheller Ludwig & Sheller P.C. v. Equitrac, No. CIV.A.07-2310, 2008 WL 2370826, at *3-4 (E.D. Pa.. June 9, 2008) ("Generally, privity of contract is necessary for a party to bring a breach of contract claim."). Moreover, at this stage of the case, whether Claremont paid Principal I under the Loan Agreement is a fact not yet before the Court, as it is neither within the four corners of the Complaint nor does it fall within the limited exceptions that allow the Court to look beyond those bounds. See Pension Benefit Guar. Corp, 998 F.2d at 1196-97.

## V. CONCLUSION

Based on the facts pleaded to the Court at this stage of the case, significant questions persist as to the applicability of the parol evidence rule to Principal II as a privy of Principal I. For that reason and others discussed above, the Court denies Defendants' Motion to Dismiss for Failure to State a Claim as to Principal II, but grants the Motion as to Principal I..

An order follows.